UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL DALEY, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v | ) ) | No. |
| JONES MOTOR CO., INC. and ZURICH AMERICAN INSURANCE CO., | ) ) ) | **CLASS ACTION COMPLAINT** |
| Defendants. | ) ) | **JURY DEMANDED AS TO COUNTS I, IV, V, and VI** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff MICHAEL DALEY, Individually and on Behalf of All Others Similarly Situated, by his undersigned attorney, and for this CLASS ACTION COMPLAINT brought pursuant to Federal Rule 23 against the defendants ZURICH AMERICAN INSURANCE COMPANY ("Zurich")  and JONES MOTOR CO. INC. ("Jones Motor"), states:

## The Parties, Jurisdiction and Venue

1.      Plaintiff and class representative Michael Daley is an individual and a resident and citizen of the State of Illinois.

2.      Zurich American Insurance Company ("Zurich")[1] is a corporation that maintains its headquarters and principal place of business in Schaumburg, Illinois and operates under the laws and statutes of the State of Illinois.

---

[1]The single term "Zurich" as used in this complaint refers to Zurich North America Insurance, Zurich American Insurance Company, ZurichNA, Zurich North America, any successors, assigns, parent corporations, or other "Zurich" entities involved in the issuance of the "Truckers Occupational Accident Insurance Certificate", Exhibit 1.

3.     Defendant Jones Motor is a foreign corporation registered in Illinois, doing business in interstate trucking industry; it does business in Illinois and during the time of the recovery period operated a hiring terminal out of Pontoon Beach, Madison County, Illinois.

4.     Jones Motor is a regulated motor carrier subject to the authority and regulations of the United States Department of Transportation (DOT).

5.     Jones Motor hired plaintiff out of its Pontoon Beach, Illinois facility in approximately December 2013.

6.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), as the amount in controversy in aggregate exceeds five million dollars, there are more than 100 putative class members in the proposed class, and there is "minimal diversity" (as the term "minimal diversity" is understood in the context of 28 U.S.C. §1332(d)).

### Plaintiff and Class Members are Employees, Not Independent Contractors, of Jones Motor

7.     In violation of the Illinois Workers' Compensation Act, 820 ILCS 305, the Illinois Wage Payment and Collection Act, 820 ILCS 115, and Illinois common law, defendant Jones Motor misclassified its employee truck drivers as independent contractors.

8.     Jones Motors employees more than two employees and is an "employer" and is plaintiff's employer pursuant to the explicit terms of the Illinois Workers' Compensation Act, 820 ILCS 305 §1 (a) 2 and §3.  §3 provides for "Automatic coverage":

> *The provisions of this Act shall apply automatically and without election to ... all employers and all their employees, engaged in any department of the following enterprises or business which are declared to be extra hazardous, namely: ... (3) Carriage by land ... including the distribution of any commodity by horsedrawn or motor vehicle where the employer employees more than 2 employees in the enterprise of business. ... (15) Any business or enterprise in which electric, gasoline or other power driven equipment is used in the operation thereof.*

9.     As a condition of employment, Jones Motor required plaintiff and class members to sign a *de facto* "Contractor Operating Agreement" ("COA"). Exhibit 2.

10.     The COA describes plaintiff and putative class members as "independent contractors."

11.     As Jones Motor drivers, plaintiff and members of the putative class are at the core of Jones Motor's common carrier business; without reliable drivers who are under defendant's direction and control, defendant has no business.

12.     Jones Motor exercises uniform and consistent direction and control over all of its drivers, including plaintiff and members of the putative class, in that:

     a.     Jones Motor, pursuant to contract, asserts exclusive possession, control and use by Jones Motor over the highway tractors and trailers "owned" and operated by plaintiff and the class members;

     b.     Jones Motor, pursuant to contract, asserts authority to certify "as qualified" the persons permitted to operate plaintiff's and other class members' highway tractors;

     c.     Plaintiff and putative class members were required to receive all loads through Jones Motor dispatchers; plaintiff and putative class members were restricted from driving for any other carrier or receiving any loads in any way other than through Jones Motor dispatchers;

     d.     Plaintiff and putative class members were required by their contractor operator agreement to "stop into the company office ... for company orientation" within 30 days of signing their contractor operator agreement;

e.      Plaintiff and putative class members were required to attend an "orientation program" administered by live computer video conference with Jones Motor agents; plaintiff and putative class members listened to lectures, read handouts, and took a test at the end of the program;

f.      Plaintiff and putative class members were required to follow, *inter alia*, "the policies and procedures of the Jones Motor Group" which included "Corporate Value Statement," "Company Speed Limit Policy," "MVR Prohibitions," "Passenger Policy," "Procedures for Passing," and "Procedures for Braking." Plaintiff and putative class members were warned failure to abide by these policies "may result in disciplinary action which could include termination";

g.      Plaintiff and putative class members' driving and work was carefully monitored and supervised by a Jones Motor fleet coordinator;

h.      Plaintiff and putative class members were required to take and complete a "road test" administered by a Jones Motor agent;

i.      Plaintiff and putative class members were controlled by a "Jones Motor Group Drug & Alcohol Testing Policy" and "Jones Motor Group Drug & Alcohol Training and Awareness Driver Handbook";

j.      Plaintiff and putative class members, as a term of their contractor operator agreement, "permanently leased" to Jones Motor;

k.      Plaintiff and putative class members were given "probation" as discipline for violating Jones Motor policies;

l.      Plaintiff and putative class members were required to report any roadside inspection to the Jones Motor Safety Department "immediately";

m.      Plaintiff and putative class members were required to submit proof of repair of any defects from a roadside inspection to the Jones Motor Safety Department;

n.      Plaintiff and putative class members were required to have station inspections performed at stations selected by Jones Motor;

o.      Plaintiff and putative class members were required to stop and inspect cargo "before starting out, within the first 50 miles of the

trip and every three hours of [sic] 150 miles or at each change of duty status whichever comes first"'

p.      Plaintiff and putative class members were required to never drive faster than the "company speed limit" of 70 mph;

q.      Plaintiff and putative class members were required to affix Jones Motor marks on their tractors and trailers;

r.      Plaintiff and putative class members were required to maintain various forms of insurance subject to Jones Motor's specifications;

s.      Jones Motor repeatedly identified and referred to plaintiff and putative class members as its employees:

    i.      Plaintiff and putative class members were required to sign "Contractor/Driver Applications" with Jones Motor; these applications state "In the event of employment, I understand that false or misleading information given in my application or interview(s) may result in discharge." These applications also state: "I authorize you to make such investigations and inquiries of my personal, employment, financial, or medical history and other related matters as may be necessary in arriving at an employment decision."

    ii.     Jones Motor's website, http://www.jonesmotor.com/benefitsJMC.html, states: "Driver must pass pre-employment drug test."

    iii.    Plaintiff and putative class members were required to sign "Disclosure and Authorization For Release of Information for Employment Purposes."

    iv.     Plaintiff and putative class members were required to sign "Important Notice Regarding Background Reports" "in connection for your application for employment."

13.     The Illinois Workers' Compensation Act 1(b)(2) defines "employee" as

*"Every person in the service of another under any contract of hire, express or implied,*

*oral or written, including persons whose employment is outside of the State of Illinois*

*where the contract of hire is made within the State of Illinois persons whose*

*employment results in fatal or non-fatal injuries within the State of Illinois where the contact of hire is made outside of the State of Illinois, and persons whose employment is principally located within the State of Illinois, regardless of the place of accident or the place where the contract of hire was made…"*

14.     Plaintiff and members of the putative class were at all relevant times employees of Jones Motor under the Illinois Workers' Compensation Act.

15.     The Illinois Wage Payment and Collection Act  820 ILCS 115/2 states: *"As used in this Act, the term "employee" shall include any individual permitted to work by an employer in an occupation, but shall not include any individual: (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and (3) who is in an independently established trade, occupation, profession or business."*

16.     Plaintiff and members of the putative class were at all relevant times employees of Jones Motor under the Illinois Wage Payment and Collection Act and under Illinois Common Law and pursuant to IRS tests/standards for determining employment status.

17.     At relevant times hereto and on information and belief, Jones Motor and Zurich have settled and resolved workers' compensation claims brought by one or more Jones Motor drivers pursuant to and under the authority of the Illinois Workers' Compensation Commission; the Illinois Workers' Compensation Commission is a

judicial or quasi judicial entity having limited jurisdiction. By submitting to the

jurisdiction of the Illinois Workers' Compensation Commission and settling personal

injury claims before the Illinois Workers' Compensation Commission, Jones Motor

benefitted from the limited exposure enjoyed by employers. Having submitted to the

jurisdiction of the Illinois Workers' Compensation Commission and having the

Commission approve settlement(s) with driver(s), Jones Motor is equitably and/or

judicially estopped from denying the employment status of its drivers; an

employer/employee relationship is a prerequisite to the Illinois Workers' Compensation

Commission having jurisdiction over any claim.

### Jones Motor and Zurich Misclassified Plaintiff and Putative Class Members as Independent Contractors, and Together Unlawfully Required Plaintiff and Putative Class Members to Pay for Their Own Workers' Compensation Policy

18.     The COA requires plaintiff and putative class members to purchase an

"occupational accident policy" and allow Jones Motor to make weekly deductions for the

"occupational accident policy."

19.     Jones Motor made weekly deductions of approximately $38.60 from the

wages of plaintiff and putative class members throughout the recovery period.

20.     Furthermore, undisclosed to plaintiff and putative class members, Zurich

on information and belief sold a "contingent liability policy" to Jones Motor for an

annual premium of, on information and belief, approximately $1,500.

21.     The contingent liability policy insured Jones Motor against only one event:

Jones Motor drivers filing workers' compensation claims. Importantly, the contingent

liability policy only insured Jones Motor against workers' compensation claims filed by

drivers who had also purchased the Zurich "occupational accident policy"; this was an incentive for Jones Motor to require all its drivers to purchase the Zurich "occupational accident policy" and Jones Motor did so pursuant to its COA.

22.    In its contracts and agreements with its shippers Jones Motor agreed to secure workers' compensation coverage for its employees and drivers.

23.    The contingent liability policy required Zurich to pay for Jones Motor's liability under state workers' compensation acts and also required Zurich to pay for Jones Motor's legal defense in defending workers' compensation claims brought by plaintiff and prospective class members.

24.    The contingent liability policy was sold to Jones Motor as part of a package of insurance products that also included the occupational accident policy sold to the drivers.

25.    The approximately $1,500 per year in annual premium Jones Motor paid to Zurich for the contingent liability policy did not cover and was never intended to cover the costs and exposure of Jones Motor's liabilities for plaintiff's and putative class members' workers' compensation claims.

26.    The contingent liability policy was intended to be a "loss leader"; Zurich fully intended to and did lose money on the contingent liability policy but made money on the occupational accident policy; this was how Zurich made a profit selling this package of insurance products to Jones Motor and its drivers – Jones Motor paid the modest premium on the contingent liability policy and the drivers paid the substantial premiums on the contingent liability policy.

27.     The risk – a workers' compensation claim brought by a driver – that was spuriously insured by the contingent liability policy was in reality a risk covered, in whole or in part, by the occupational accident policy.

28.     When plaintiff filed his workers' compensation claim, Zurich paid his statutory workers' compensation benefits pursuant to the Illinois Workers' Compensation Act.  Initially, Zurich paid benefits from a "general liability policy" account and subsequently paid the workers' compensation claim through the "occupational accident policy," thus effectively using the premiums plaintiff paid to Zurich for the occupational accident policy to indemnify Jones Motor for its workers' compensation liability.

29.     Plaintiff and putative class members, therefore, paid for Jones Motor's statutory workers' compensation premiums and paid for Jones Motor's attorney to represent Jones Motor against them.

30.     It is unlawful in Illinois for employees to pay their own workers' compensation.  The Illinois Workers' Compensation Act provides for "Automatic Coverage" stating as follows: "The provisions of this Act, hereinafter following shall apply automatically and without election…to all employers and all their employees…" Coverage is required by 820 ILCS 305/3.3 for employers engaged in *"[c]arriage by land, water or aerial service and loading or unloading in connection therewith, including distribution of any commodity by horse drawn or motor vehicle where the employer employs more than 2 employees in the enterprise or business."*

31.     The Illinois Workers' Compensation Act 820 ILCS 305/4(g) states: *"Any contract, oral, written or implied, of employment providing for relief benefit, or*

*insurance or any other device whereby the employee is required to pay any premium or premiums for insurance against the compensation provided for in the is Act shall be null and void. Any employer withholding from the wages of any employee any amount for the purpose of paying any such premium shall be guilty of a Class B misdemeanor."*

32.     Jones Motor has withheld from the plaintiff's wages and from the class member's wages workers' compensation premiums in violation of the Illinois Workers' Compensation Act 820 ILCS 305/4(g); as such, Jones Motor's conduct as alleged herein is criminal conduct under the Illinois Workers' Compensation Act.

### Jones Motor Unlawfully Deducted Monies from Plaintiff's and Putative Class Members' Compensation

33.     Jones Motor made multiple deductions from plaintiff's and putative class members' compensation.

34.     Jones Motor deducted, *inter alia,* collision insurance, unladen insurance, other forms of insurance, and administrative fees.

35.     Plaintiff and putative class members did not give their express written consent at the times these deductions were made as required by 820 ILCS 115/9.

36.     As plaintiff and putative class members were employees of Jones Motor under the Illinois Wage Payment and Collection Act, these deductions were unlawful.

### Class Action Allegations

37.     Pursuant to Federal Rules of Civil Procedure 23(b), plaintiff seeks class action certification of the following class:

> **All Jones Motor drivers who contracted with Jones Motor Co. Inc. from December 1,  2011 to present whose contract of hire was made in Illinois at *inter alia* the Chicago, Granite City, New Boston, and Quincy terminals.**

38.     Numerosity – Rule 23 (a)(1): The class is numerous; the putative class of misclassified driver/employees is well in excess of one hundred members. Proceeding in individual suits or with simple joinder of members is impracticable; judicial economy is achieved in avoiding multiple duplicative suits. On information and belief there are no other class actions pending or filed regarding the issues raised in this complaint.

39.     Commonality – Rule 23 (a)(2): The questions of law and fact are common to the class. There are critical issues of law and fact common to all members of the class, those common issues include the drivers' status as employees (as opposed to independent contractors) and Jones Motor having the employees pay their own workers' compensation premiums to Zurich. Stating the commonality in greater detail, plaintiff and the class allege that all putative class members have been:

a.     Subject to the same or similar COA and Jones Motor policies and procedures that uniformly subject all putative class members to employment-level direction and control;

b.     Improperly classified by Jones Motor as independent contractors instead of properly classified as employees;

c.     Subject to the same or similar COA which required that all putative class members purchase a Zurich Occupational Accident Insurance policy;

d.     Subjected to false and deceptive statements by both defendants, Jones Motor and Zurich, in the course of their business, which false and deceptive statements were intended by both defendants to mislead and deprive the putative class members of their rights and protections under the Illinois Workers' Compensation Act and to create unwarranted and unlawful profits for Zurich and unlawful cost savings for Jones Motor;

e.     Provided with significantly less coverage under the Zurich Occupational Accident Insurance policy than the class members would have received had the class members been correctly classified

as employees and thus protected under the Illinois Workers' Compensation Act;

f.  Coerced and deceived by both defendants into paying their own workers' compensation premiums in violation of the IWCA.

40.  Commonality – the issues and allegations made in the paragraph immediately above involve similar issues of law and fact applicable to all class members; the class members have all suffered the same injury – paying their own workers' compensation premiums and being deprived of their rights pursuant to the Illinois Workers' Compensation Act.

41.  Consistent with the requirements of Rule 23(a)(2), answering the common issues of law and fact as described in detail above and in this proceeding will significantly advance resolution of each proposed class member's litigation.

42.  Typicality – Rule 23(a)(3): The named plaintiff's claims are typical of the claims of all class members. The named plaintiff and each and every putative class member have been subjected to the same misclassification, deception, and consequences of misclassification. A sufficient relationship exists between the injury the defendants caused to the plaintiff and the defendants' illegal conduct affecting the class so that this Court may find a collective nature to the defendants' illegal and improper conduct. By proving the plaintiff's claim, plaintiff will at the same time prove the claims of the class members.

43.  Adequate Representation – Rule 23(a)(4): Plaintiff is an adequate representative of the class; plaintiff will fairly and adequately represent the interests of the members of the class; plaintiff's interests are common with the interests of the class. Plaintiff's interests are not in conflict with the interests of other members of the class.

44.     Adequate Representation – Rule 23(a)(4): The attorney for plaintiff and the class is experienced, qualified, and competent to handle this class action litigation. The class attorney has decades of experience litigating complex cases and has successfully tried numerous cases to verdict. Class counsel will vigorously prosecute the class interest. Class counsel's interests are not in conflict with the plaintiff's interests or the class's interests.

45.     As specifically alleged herein, questions of law and fact common to the class predominate over any questions affecting individual members of the class.

46.     A class action is superior to other available litigation methods for the fair and efficient adjudication of this controversy. Without class representation many individual class members will be deterred from litigation by its complexity and expense. Even if individual class members were willing and able to litigate alone, the Court would be inundated with myriad lawsuits involving identical facts and identical legal issues; this would exponentially increase the expenses to all parties and the burdens on the Court. Proceeding by class action presents fewer management difficulties and provides the benefit of unitary adjudication, economies of scale, and comprehensive supervision by this Court.

**COUNT I**
vs. Jones Motor and Zurich
*Civil Conspiracy*

47.     Plaintiff incorporates by reference all other allegations made in this Complaint as if fully set forth in this Count.

48.     Jones Motor is an employer pursuant to the Illinois Workers' Compensation Act, 820 ILCS 305/2.

49.     Jones Motor is required by the Illinois Workers' Compensation Act, 820 ILCS 305 et. seq., to provide workers' compensation benefits/coverage to its employees.

50.     Plaintiff and the class members were at all relevant times employees of Jones Motor and were entitled to the protections, rights, and benefits afforded to employees by the Illinois Workers' Compensation Act.

51.     For the reasons alleged herein, Jones Motor and Zurich are equitably and judicially estopped from denying the employer/employee relationship between the plaintiff and putative class members and Jones Motor.

52.     Jones Motor and Zurich each knew plaintiff and members of the putative class were employees of Jones Motor.

53.     Jones Motor and Zurich each knew there was a risk that if the Illinois Workers' Compensation Commission reviewed the issues and the facts, the Commission would determine that plaintiff and members of the putative class were employees of Jones Motor.

54.     Jones Motor and Zurich each knew that if plaintiff or a member of the putative class filed a workers' compensation claim and the Illinois Workers' Compensation Commission determined the driver was a Jones Motor employee, then Jones Motor would be required to pay premiums to purchase a workers' compensation policy to benefit plaintiff and the putative class members, and Zurich would lose customers paying premiums for its "occupational accident policy" that was redundant to the workers' compensation policy Jones Motor was required by law to provide.

55.     Jones Motor and Zurich knowingly conspired with each other to misrepresent plaintiff's and putative class members' employment status; Jones Motor

and Zurich each made multiple misrepresentations to plaintiff and putative class members that they were independent contractors, not employees, and were not covered by the Illinois Workers' Compensation Act.

56.     Jones Motor and Zurich intended plaintiff and the other class members to rely upon Jones Motor's and Zurich's misrepresentations that plaintiff and the class members were not entitled to the protection of the Illinois Workers' Compensation Act.

57.     Jones Motor and Zurich knowingly conspired with each other to discourage plaintiff and putative class members from filing workers' compensation claims and having the Illinois Workers' Compensation Commission determine that the driver was an employee. For example, the "occupational accident policy" Zurich sold included a term immediately terminating benefit payments from the policy if the driver filed a workers' compensation claim; the true purpose of this policy term was to discourage drivers, who at the time would be off work and relying on the payments from the policy for their sustenance, from filing workers' compensation claims. There is no legitimate business reason to include this coercive term.

58.     Jones Motor and Zurich conspired with each other to require plaintiff and other class members to buy and make premium payments for an "occupational insurance policy" from Zurich that was of no value or was of far less value than plaintiff and class members were led to believe it was, because said occupational insurance policy either exclusively or primarily provided coverage for work-related illnesses and work-related injuries which illnesses and injuries were fully covered by the Illinois Workers' Compensation Act.

59.     In furtherance of the defendants' conspiracy, Zurich has, in an effort to assist Jones Motor in avoiding its legal obligations under the Illinois Workers' Compensation Act, stated to Jones Motor employees and others: Zurich "Occupational Accident coverage … is **not** a Worker's Compensation plan, automobile plan or a liability insurance plan. There is no employer."

60.     In furtherance of the defendant's conspiracy, Zurich has, in an effort to assist Jones Motor in avoiding its legal obligations under the Illinois Workers' Compensation Act, stated to plaintiff and others: "[driver] is NOT covered under a Workers' Compensation plan."

61.     In furtherance of the defendants' conspiracy, Zurich has, in an effort to avoid paying the medical bills it would be required to pay under the Illinois Workers' Compensation Act, stated to plaintiff's health care providers that the "Occupational Accident Policy" does not pay for "expenses which are covered under any other insurance of any kind" …  and that therefore the health care providers must submit bills for work-related injuries to the employee's private healthcare plan.

62.     The Zurich Occupational Accident Policy's benefits, compensation, and payments are of significantly less value than the benefits, compensation, and payments provided by the Illinois Workers' Compensation Act. By way of example, the Zurich Occupational Accident Policy contains coverage limits not found in the Illinois Workers' Compensation Act and pays benefits less frequently than benefits are paid under the Illinois Workers' Compensation Act.

63.     Zurich had a claims handling policy that explicitly instructed claims handlers that it was Zurich's policy – irrespective of the actual facts of a given situation

– to avoid having drivers deemed employees; instead of seeking to have drivers appropriately classified, Zurich sought to have all drivers treated as and classified as independent contractors. This policy reveals that Zurich was fully aware of the risk to Zurich and Jones Motor (and other carriers) of having drivers properly classified as employees even when the facts required that conclusion.

64.     The misclassification of Jones Motor employees as "independent contractors," the requirement that the driver/employees purchase and pay the premiums for a Zurich "Occupational Accident Policy," and the defendants' misleading and deceptive statements made in concert with each constitute an unlawful scheme and conspiracy to illegally transfer legal liability and financial responsibility for work-related injuries from Jones Motor to Jones Motor's employees and to the employees' private healthcare plans.

65.     The Illinois Workers' Compensation Act, 820 ILCS 305/4 provides, *inter alia*:

> (h) It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

66.     As a result of the conspiracy between Jones Motor and Zurich, Jones Motor and Zurich have in concert with each other violated the Illinois Workers' Compensation Act 820 ILCS 305/1(b)(2), 4(h), and 4(g) in one or more of following ways:

a.  Interfered with and restrained the plaintiff and class members in the exercise of the rights and/or remedies granted to them by the Illinois Workers' Compensation Act;

b.  Coerced and deceived plaintiff and the class members into paying to defendant Zurich premiums coverage for workers' compensation coverage which premiums Zurich is not lawfully permitted to collect or receive from an insured's employees;

c.  Coerced and deceived plaintiff and the class members into paying to defendant Zurich premiums for workers' compensation coverage when Jones Motor, pursuant to the Illinois Worker's Compensation Act, was required to provide the plaintiff and class members with insurance coverage;

d.  Deceived injured class members' and the injured class members' medical providers and health care insurance carriers into believing that injured class members were not eligible for workers' compensation benefits for work-related injuries the injured class members sustained, when both defendants knew the plaintiff and class members are covered by the Illinois Workers' Compensation Act and that the employer and its carrier, and not the health care insurance carrier, was liable for paying for the entire medical treatment for work-related injuries. Plaintiff and injured class members, at a time they were unable to work, were required to pay co-pays and other related costs which Zurich and/or Jones Motor were required to pay;

e.  By concerted deception, unlawfully converted a portion of the plaintiff's and class members' earnings, wages, and/or compensation to Jones Motor and Zurich.

67.  Jones Motor and Zurich illegally and unlawfully conspired with each other to shift from Jones Motor to plaintiff and the class members the legal obligations of Jones Motor under the Illinois Workers' Compensation Act, 820 ILCS 305/1 et. seq., to provide workers' compensation coverage to its employees.

68.  Jones Motor and Zurich have illegally and unlawfully conspired with each other to violate the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, by unlawfully deducting "occupational accident policy" premiums that were actually

workers' compensation policy premiums from plaintiff's and the class members' wages and compensation in violation of both 820 ILCS 115/1 and the explicit terms of 820 ILCS 305/4(g).

69.     As a direct and proximate result of defendants' conspiracy and unlawful/illegal/criminal acts, plaintiff and the class members have suffered damages, including but not limited to paying premiums for an "occupational accident insurance" policy that plaintiff and class members would not have purchased but for defendants' conspiracy and the acts and statements made in furtherance of the conspiracy.

70.     The conduct of the defendants, the nature and breadth of the conspiracy of the defendants, the ongoing deception of the defendants, the criminal nature of the violations, the violation of state law, the violation of the strong public policy of the State of Illinois, and the targeting of vulnerable individuals by the defendants are so offensive to morality, the public good, and justice that significant punitive damages are necessary, required, and warranted. Given the defendants' financial conditions/circumstances and the need to deter these defendants and others similarly perfidiously predisposed, significant punitive damages are required to prevent repetition of the unlawful conduct and intentional acts/schemes alleged herein.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count I respectfully requests that this Court find for the plaintiff and the class members and against defendants Jones Motor and Zurich as follows:

A.     Find that plaintiff and the class members were and are employees of Jones Motor *vis a vis* the Illinois Workers' Compensation Act;

B.     Find that Jones Motor and Zurich did unlawfully deceive and coerce plaintiff and the other class members into purchasing and paying

premiums for an occupational policy, the "occupational accident insurance policy";

C.     Find that Jones Motor and Zurich did unlawfully conspire with each together to relieve Jones Motor of its financial obligations to pay the plaintiff's and the class members' workers' compensation premiums, and to transfer the legal obligation for payment of workers' compensation premiums from defendant Jones Motor to the plaintiff and the class members;

D.     Find that defendant Zurich, as a result of the conspiracy that existed between Jones Motor and Zurich, unlawfully collected premiums for workers' compensation insurance from Jones Motor's drivers/employees, the plaintiff, and class members;

E.     Award plaintiff and putative class members compensatory damages against defendants, jointly and severally, in excess of $75,000 and in an amount necessary and appropriate to make the plaintiff and class members whole;

F.     Award plaintiff and putative class members punitive damages against each defendant in excess of $75,000 and in an amount that the Court and jury determine are appropriate and just;

G.     Enter such other and additional relief as the Court deems just and proper.

## COUNT II
vs. Jones Motor
*Illinois Deceptive Business Practices Act*

71.    Plaintiff incorporates by reference all allegations contained elsewhere in this Complaint.

72.    Plaintiff and all class members are or have been at relevant times hereto employees of Jones Motor.

73.    At all relevant times hereto, Jones Motor represented to plaintiff and class members that plaintiff and class members were not employees but were independent contractors.

74.     Jones Motor required plaintiff sign a "Driver Information Sheet and Beneficiary Designation" (as part of the COA) that states: "I am an independent contractor..."  It also states: "I understand that the cost of the insurance is my sole obligation and responsibility regardless of the above arrangement for premium payment." These statements are false.

75.     Jones Motor intended for the plaintiff and class members to rely upon Jones Motor's misrepresentations as to their status as independent contractors and purchase an "occupational accident policy" from Zurich that was not necessary to purchase as the drivers/employees were covered by the Illinois Workers' Compensation Act; further, the policy sold by Zurich, if it was worth anything, was worth far less than Zurich represented to plaintiff and class members it was worth.

76.     Plaintiff and putative class members, as a proximate result of Jones Motor's misrepresentations as to their employment status and other acts alleged herein, were deceived into paying their own workers' compensation premiums.

77.     Jones Motor benefitted financially from its violations of the Illinois Deceptive Business Practices Act by transferring to plaintiff and putative class members its statutory obligation to pay for workers' compensation insurance premiums.

78.     Plaintiff and class members, as a proximate result of Jones Motor's deception, suffered actual damages which damages include, *inter alia*, the amount of the premiums the plaintiff and class members paid to Zurich.

79.     Pursuant to the Illinois Deceptive Business Practices Act, plaintiff and class members must be awarded their reasonable attorneys' fees, costs, and expenses incurred in bringing this matter.

80.    Pursuant to the Illinois Deceptive Business Practices Act, significant punitive damages must be assessed against the defendant Jones Motor in an amount sufficient to punish Jones Motor and to deter others.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count II respectfully requests that this Court find for the plaintiff and the class members and against defendant Jones Motor as follows:

A.    Find that plaintiff and the class members were and are employees of Jones Motor *vis a vis* the Illinois Workers' Compensation Act;

B.    Find that Jones Motor made false statements to plaintiff and all putative class members regarding their employment status and rights under the Illinois Workers' Compensation Act;

C.    Find that Jones Motor deceived plaintiff and all putative class members into purchasing and paying premiums for a Zurich "occupational accident policy" that was worthless or worth far less than it was represented to be worth, as it was completely redundant to workers' compensation coverage to which plaintiff and all putative class members were entitled to by the Illinois Workers' Compensation Act;

D.    Find that Jones Motor deceived plaintiff and all putative class members into paying their own workers' compensation premiums and to transfer Jones Motor's legal obligation for payment of workers' compensation premiums from Jones Motor to plaintiff and the putative class members, and find that this deception violated the Illinois Deceptive Business Practices Act;

E.    Award plaintiff and putative class members compensatory damages in excess of $75,000 against Jones Motor in an amount necessary and appropriate to make the plaintiff and class members whole;

F.    Award plaintiff and putative class members punitive damages in excess of $75,000 against Jones Motor in an amount that the Court determines is appropriate and just;

G.    Award plaintiff and putative class members their attorneys' fees and costs;

H.    Enter such other and additional relief as the Court deems just and proper.

## COUNT III
### vs Zurich
*Illinois Deceptive Business Practices Act*

81.     Plaintiff incorporates by reference all allegations contained elsewhere in this Complaint.

82.     Plaintiff and class members at all relevant times hereto were and are employees of Jones Motor.

83.     Zurich represented to plaintiff and class members that plaintiff and class members were not employees but were independent contractors of Jones Motor.

84.     Zurich intended for the plaintiff and class members to rely upon Zurich's representation as to their employment status and purchase an "occupational accident policy" from Zurich.

85.     Plaintiff and class members, as a proximate result of the defendant Zurich's misrepresentation, were deceived into paying to defendant Zurich their own workers' compensation premiums, premiums Jones Motor was required by the Illinois Workers' Compensation Act to pay.

86.     During the course of its doing business with plaintiff and other class members, Zurich represented that the "Occupational Accident Insurance Policy" was not a workers' compensation policy, that there was no employment relationship between the plaintiff and the putative class members and Jones Motor.

87.     At all relevant times when defendant Zurich represented to the plaintiff and other class members that the "occupational accident policy" was not a workers' compensation policy and that there was no employment relationship between Jones Motor and plaintiff and the putative class members, Zurich knew that Jones Motor had

potential liability for workers' compensation to its driver/employers; Zurich and Jones Motor made undisclosed alternative arrangements between themselves for Zurich to provide insurance coverage for Jones Motor's workers' compensation liabilities *using the premiums the drivers paid Zurich for the "occupational accident policy."*

88.     Contrary to Zurich's repeated representations that the "Occupational Accident Insurance Policy" was not a workers' compensation policy, Zurich has at all relevant times treated the "occupational accident policy" as a workers' compensation policy; Zurich has used premiums paid for the "occupational accident policy" to settle and pay workers' compensation claims filed by Jones Motor drivers with the Illinois Workers' Compensation Commission.

89.     Zurich never disclosed to plaintiff and putative class members the other critical component of the package of insurance products it sold to Jones Motor: the contingent liability policy.

90.     Zurich never disclosed to plaintiff and putative class members that Zurich would use their "occupational accident policy" premiums payments, which subsidized the contingent liability policy, to pay for Jones Motor's workers' compensation liabilities to them and to pay for an attorney to represent Jones Motor against them in the workers' compensation litigation.

91.     Plaintiff and class members, as a proximate result of Zurich's deception, suffered actual damages which damages include, *inter alia*, the amount of the premiums they paid to Zurich.

92.     Pursuant to the Illinois Deceptive Business Practices Act, plaintiff and class members must be awarded their reasonable attorneys' fees, costs, and expenses incurred in bringing this matter.

93.     Pursuant to the Illinois Deceptive Business Practices Act, significant punitive damages must be assessed against the defendant Zurich in an amount sufficient to punish Zurich and to deter others.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count III, respectfully requests that this Court find for the plaintiff and the putative class members and against Defendant Zurich as follows:

A.      Find that plaintiff and the class members were and are employees of Jones Motor *vis a vis* the Illinois Workers' Compensation Act;

B.      Find that Zurich made false statements to plaintiff and all putative class members regarding their employment status and rights under the Illinois Workers' Compensation Act;

C.      Find that Zurich deceived plaintiff and all putative class members into purchasing and paying premiums for a Zurich "occupational accident policy" that was worthless or worth far less than it was represented to be worth, as it was completely redundant to workers' compensation coverage to which plaintiff and all putative class members were entitled to by the Illinois Workers' Compensation Act;

D.      Find that Zurich deceived plaintiff and all putative class members into paying their own workers' compensation premiums and to transfer Jones Motor's legal obligation for payment of workers' compensation premiums from Jones Motor to plaintiff and the putative class members, and find that this deception violated the Illinois Deceptive Business Practices Act;

D.      Award plaintiff and putative class members compensatory damages in excess of $75,000 against Zurich in an amount necessary and appropriate to make the plaintiff and class members whole;

E.      Award plaintiff and putative class members punitive damages in excess of $75,000 against Zurich in an amount that the Court determines is appropriate and just;

F.     Award plaintiff and putative class members their attorneys' fees and costs;

G.     Enter such other and additional relief as the Court deems just and proper.

## COUNT IV
### vs. Jones Motor
*Unjust Enrichment*

94.     Plaintiff incorporates by reference all allegations made elsewhere in this Complaint.

95.     Jones Motor unlawfully misclassified its employee drivers as independent contractors.

96.     As a result of Jones Motor's misclassification, fraud, and misdemeanor crimes, Jones Motor has been unjustly enriched.

97.     Jones Motor has been unjustly enriched by, *inter alia*, avoiding FICA contributions, payroll taxes, and unemployment tax.

98.     Jones Motor has been further unjustly enriched by, *inter alia,* unlawfully passing on certain business expenses to its employee drivers, including, *inter alia,* fuel costs.

99.     Jones Motor has been further unjustly enriched by, *inter alia,* avoiding its statutory obligation to pay workers' compensation premiums.

100.     Jones Motor must not be permitted to retain gains from its misclassification of its drivers; Jones Motor must be required to return its improper gains from its illegal acts to plaintiff and class members so Jones Motor is no better off for having unlawfully misclassified its drivers.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count IV respectfully requests that the Court award plaintiff and the class members such equitable relief from Jones Motor as the Court deems just and proper.

**COUNT V**
vs. Zurich
*Unjust Enrichment*

101.    Plaintiff incorporates by reference all allegations made elsewhere in this Complaint.

102.    Zurich conspired with Jones Motor to misclassify Jones Motor's employee drivers as independent contractors and sell their drivers a fraudulently-described "occupational accident policy" that was redundant to the employees' statutory workers' compensation rights pursuant to the Illinois Workers' Compensation Act.

103.    Zurich has been unjustly enriched by its fraud.  Zurich has collected premiums for a policy sold to drivers under false pretenses; the policy provides significantly less benefits to the drivers than the workers' compensation coverage to which the drivers were statutorily entitled.

104.    Zurich has been further unjustly enriched in that the occupational accident policy was, by Zurich's representations, secondary to any personal or private health insurance owned by the drivers and so permitted Zurich to avoid liability for medical expenses which Zurich would have been required to pay if the drivers had been properly covered by workers' compensation insurance.

105.   Zurich must not be permitted to retain gains from its fraud; Zurich must be required to return its gains from its unlawful acts so Zurich is no better off for having committed the fraud against plaintiff and all class members.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count VI respectfully request that the Court award plaintiff and the class members such equitable relief against Zurich as the Court deems just and proper.

### COUNT VI
vs. Jones Motor
*Illinois Wage Payment and Collection Act*

106.   Plaintiff incorporates by reference all allegations made elsewhere in this Complaint.

107.    Jones Motor made multiple deductions from plaintiff's and putative class members' pay; Jones Motor deducted, *inter alia,* collision insurance, unladen insurance, other forms of insurance, and administrative fees.

108.   Plaintiff and putative class members did not give their express written consent at the times these deductions were made as required by 820 ILCS 115/9.

109.   As plaintiff and putative class members were employees of Jones Motor under the Illinois Wage Payment and Collection Act, these deductions were unlawful.

WHEREFORE, Plaintiff, on his behalf and on behalf of the class members identified herein, as to Count VI, respectfully requests that this Court find for the plaintiff and the class members and against Jones Motor as follows:

A.   Find that Jones Motor violated the Illinois Wage Payment and Collection Act;

B.    Award plaintiff and the putative class compensatory damages in excess of $75,000;

C.    Award plaintiff and the putative class their reasonable attorneys' fees and costs.


MICHAEL DALEY, individually and on behalf of all others similarly situated


By:     */s/ Jack Daugherty*
        Jack Daugherty (IL 6229106)
        JACK DAUGHERTY LAW, P.C.
        112 Front Street
        Alton, IL  62002
        Phone:  618-462-9160
        Fax:  618-462-9167
        Jack@jackdaughertylaw.com

        ATTORNEY FOR PLAINTIFFS