IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL DALEY, individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 17-CV-56-NJR-DGW |
| JONES MOTOR CO., INC., and ZURICH AMERICAN INSURANCE COMPANY, ) ) ) ) ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is Defendant Jones Motor Co. Inc.'s Motion to Dismiss, filed on April 25, 2017 (Doc. 24). Plaintiff Michael Daley filed a response in opposition to the Motion on May 30, 2017 (Doc. 34), and Jones Motor filed a reply on June 13, 2017. (Doc. 35). For the reasons set forth below, the Motion to Dismiss is granted.

### FACTUAL BACKGROUND[1]

Plaintiff Michael Daley brought a six-count complaint against Defendants Jones Motor Co. Inc. ("Jones Motor") and Zurich American Insurance Co. ("Zurich") on behalf of himself and putative class members, all of whom are truck drivers for Jones Motor (Doc. 1). The complaint is based primarily on the allegations that Plaintiff and the other drivers were employees of Jones Motor, and therefore, Jones Motor was required by the

---

[1] All information in this section is taken from the Complaint and the employment documents attached to the Complaint (Doc. 1, Doc. 1-2).

Illinois Workers' Compensation Act to purchase workers' compensation coverage for the drivers. But Jones Motor purportedly schemed with Zurich to misclassify its drivers as independent contractors in order to evade its obligations under the Illinois Workers' Compensation Act and avoid paying workers' compensation premiums.

Here's how Plaintiff alleges that it all worked. Jones Motor made Plaintiff and its other drivers sign Contractor Operating Agreements. The Agreements indicated that the drivers were independent contractors and that no workers' compensation benefits would be provided by Jones Motor to the drivers in the event they were injured on the job. Instead, the Agreements required the drivers to purchase an "occupational accident policy" from Zurich and to allow Jones Motor to make a deduction from their wages of to cover the cost of the policy. The deduction was approximately $38 per week.

Jones Motor and Zurich then conspired with each other to discourage the drivers from filing workers' compensation claims so that the Illinois Workers' Compensation Commission would never have the opportunity to analyze and determine whether the drivers were actually employees of Jones Motor and entitled to workers' compensation coverage. For example, the occupational accident policies issued by Zurich included a term immediately terminating benefit payments under the policy if the driver filed a workers' compensation claim.

In the event that a driver nevertheless filed a workers' compensation claim, Jones Motor was covered by a "contingent liability policy" through Zurich for which it paid an annual premium of approximately $1,500. This policy required Zurich to pay for Jones Motor's liability under state workers' compensation acts and also required Zurich to pay

for Jones Motor's legal defense in defending workers' compensation claims filed by its employees and drivers. Plaintiff essentially alleges, however, that the contingent liability policy was just for show. The modest premiums Jones Motor paid for the contingent liability policy were not sufficient to cover, and were never intended to cover, the costs of workers' compensation claims. Instead, when a driver filed a workers' compensation claim, Zurich used the contingent liability policy to pay the driver's initial workers' compensation benefits, but then paid the driver's subsequent benefits out of the occupational accident policies that the drivers purchased. Thus, the drivers were unwittingly paying the workers' compensation benefits they were owed by Jones Motor and also paying for an attorney to represent Jones Motor against them in the workers' compensation litigation.

According to Daley, he and the putative class members were coerced and deceived into paying premiums for occupational accident policies that were worthless, or worth far less than represented, because the policies provided coverage for work-related injuries that were already covered by the Workers' Compensation Act. Jones Motor, on the other hand, was able to save a significant amount of money by avoiding workers' compensation premiums. Zurich turned a profit because, even though it lost money on the contingent liability policy with Jones Motor, it was able to recoup that money and then some through the substantial premiums paid by well over one hundred drivers for the occupational accident policies. Zurich also was able to save money by structuring the occupational accident policies to transfer responsibility for medical bills to the drivers' private healthcare plan, by implementing coverage limits not

found in the Illinois Workers' Compensation Act, and by paying benefits less frequently than benefits are paid under the Act.

Based on these allegations, Daley asserts claims against Jones Motor and Zurich for civil conspiracy (Count 1), for violations of the "Illinois Deceptive Business Practices Act" (Counts 2 & 3),[2] and for unjust enrichment (Counts 4 & 5). Daley also asserts a claim against Jones Motor for violations of the Illinois Wage Payment and Collection Act (Count 6).

Jones Motor filed a motion to dismiss the complaint, contending that Daley's claims are all predicated upon a common set of facts: that under the Illinois Workers' Compensation Act, 820 ILL. COMP. STAT. 305 *et seq.*, an employment relationship existed between Daley and Jones Motor, that Jones Motor misclassified Daley as an independent contractor, and that Jones Motor unlawfully required Daley to purchase his own Workers' Compensation insurance policy from Zurich (Doc. 24). Jones Motor argues that the resolution of these issues rests within the exclusive jurisdiction of Illinois Workers' Compensation Commission ("Commission") (Doc. 24).

In response, Daley argues that the Commission does not have any jurisdiction, much less exclusive jurisdiction, over the issue of whether he was misclassified as an independent contractor because he does not have a pending workers' compensation claim for a workplace injury or death (Doc. 34). Daley also argues that Jones Motor should be judicially estopped from denying that the truckers were its employees (Doc. 34).

---

[2] The Court notes that the full name of the statute is the Illinois Consumer Fraud and Deceptive Business Practice Act. 815 ILL. COMP. STAT. 505/2–505/12.

<u>ANALYSIS</u>

The Court begins its discussion by noting that although Jones Motor's motion appears to raise a question about the Court's jurisdiction, which would fall under Federal Rule of Civil Procedure 12(b)(1), the motion to dismiss is properly brought under Rule 12(b)(6) for failure to state a claim. *See Dunlap v. Nestle USA, Inc.*, 431 F.3d 1015, 1017 (7th Cir. 2005); *Goetzke v. Ferro Corp.*, 280 F.3d 766, 779 (7th Cir. 2002). The basis for subject matter jurisdiction is the Class Action Fairness Act, 28 U.S.C. § 1332(d), which is a component of the federal diversity statute, 28 U.S.C. § 1332 (Doc. 1). In matters of diversity jurisdiction, "[t]he exclusivity provisions of Illinois's workers' compensation statute do not (indeed, may not) affect the scope of the jurisdictional authority granted to the federal courts by Congress." *Dunlap*, 431 F.3d at 1017 (parenthetical in original). *Goetzke*, 280 F.3d at 779 ("Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority.") Instead, the question is whether Daley's claims are viable causes of action in light of the exclusivity provisions of the Workers' Compensation Act. "If state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted." *Goetzke*, 280 F.3d at 779.

The key consideration in this matter is whether the Illinois Workers' Compensation Act provides exclusivity of remedy over Daley's claims to the Illinois Workers' Compensation Commission, such that a federal court would be unable to grant relief. Jones Motor points to Section 18 of the Workers' Compensation Act (Doc. 24, pp. 1, 5), so the Court will start there. Section 18 provides "All questions arising under this Act,

if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Commission." 820 ILL. COMP. STAT. 305/18.

The Illinois Supreme Court has already determined that this provision, by itself, is not sufficient to vest exclusive jurisdiction in the Commission over all issues related to workers' compensation. *Employers Mutual Cos. v. Skilling*, 644 N.E.2d 1163, 1165 (Ill. 1994). In *Skilling*, the issue involved an employee who filed workers' compensation claims against his employer for injuries that occurred in Illinois. *Skilling*, 644 N.E.2d at 1164. The employer's workers' compensation insurance carrier filed a declaratory action in the Illinois state court, arguing that it had no duty to defend or indemnify the employer for injuries occurring in Illinois as its policy provided coverage only for injuries occurring in Wisconsin. *Id.* The Illinois Supreme Court was asked to determine whether the Commission had exclusive jurisdiction over the insurance coverage dispute, or if the Commission's jurisdiction was concurrent with the circuit court. *Id.* at 1165. The court explained that "the courts of Illinois have original jurisdiction over all justiciable matters," but the legislature can divest the courts of jurisdiction for administrative actions by enacting a comprehensive statutory administrative scheme that explicitly vests exclusive jurisdiction in the administrative agency. *Id.* (citations omitted). The court looked at Section 18 of the Workers' Compensation Act and determined that because it did not specifically exclude the circuit courts from deciding insurance coverage issues, it was insufficient to divest the circuit court of its original jurisdiction. *Id.* Therefore, the circuit court and the Commission had concurrent jurisdiction to hear the issue. *Id.*

The *Skilling* court went on to determine that the circuit court's jurisdiction was paramount to the Commission's jurisdiction because the issue presented a question of law. *Skilling*, 644 N.E.2d at 1166. "It is the particular province of the courts to resolve questions of law such as the one presented in the instant declaratory judgment case. Administrative agencies are given wide latitude in resolving factual issues but not in resolving matters of law." *Id.* The *Skilling* court further stated that "a matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards." *Id.*

The Court notes, however, that the rule announced in *Skilling* is not controlling in cases that involve a determination of an individual's entitlement to workers' compensation benefits under the Act. The Illinois Supreme Court held that "the circuit courts have no original jurisdiction over workers' compensation proceedings where benefits are determined." *Gruszeczka v. Illinois Workers' Comp. Comm'n*, 992 N.E.2d 1234, 1242 (Ill. 2013) (citing *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 727 (Ill. 1992)). Rather, the role of the circuit court in such proceedings "is appellate only . . . limited by section 19(f) of the Workers' Compensation Act." *Gruszeczka*, 992 N.E.2d at 1242 (quoting *Hartlein*, 601 N.E.2d at 727). *See also Cont'l W. Ins. Co. v. Knox Cty. EMS, Inc.*, 52 N.E.3d 558, 564 (Ill. App. Ct. 2016) ("The construction of [an] insurance policy is not a determination of the factual issues related to a determination of workers' compensation benefits, such as the nature or extent of the injury or the potential defenses to the workers' compensation claim. If it was, the circuit court would have no original

jurisdiction in the case and the commission would have exclusive jurisdiction as it would be in a better position to draw on its special expertise to answer these questions."); *Hollywood Trucking, Inc. v. Watters*, 895 N.E.2d 3, 11 (Ill. App. Ct. 2008) ("In cases involving a determination of an employee's entitlement to workers' compensation benefits and the employer's defenses to the claim, the circuit court's role is appellate only." (citing *Gunnels v. Industrial Comm'n,* 195 N.E.2d 609, 611 (Ill. 1964))).

The courts likewise have no original jurisdiction over claims that an employer negligently or deliberately failed to provide workers' compensation insurance. *Keating v. 68th & Paxton, L.L.C.*, 936 N.E.2d 1050, 1059–60 (Ill. App. Ct. 2010), *cert. denied*, 237 Ill.2d 559 (Ill. 2010). Section 4(d) of the Workers' Compensation Act "contains regulations to ensure that employers maintain adequate workers' compensation insurance and pay compensation claims to their employees." *Id.* at 1059 (citing 820 ILL. COMP. STAT. 305/4). And "[w]hen we read section 4(d) as a whole, together with the Commission's broad grant of authority under sections 18 and 19, we find that the legislature intended for the Commission to determine whether employers subject to the Act have failed to comply with its regulations and, if so, what penalties apply." *Id.* at 1060. *See also Cont'l W. Ins. Co.*, 52 N.E.3d at 564 ("[T]he construction of the insurance policy does not concern factual determinations regarding whether the enforcement provisions of section 4 apply, such as whether an employment relationship existed, whether the employer was required to provide workers' compensation insurance or whether the employer knowingly or negligently failed to comply with that requirement. If it did, then again, the commission would have primary jurisdiction over the circuit court to determine these fact-intensive

questions using its specialized knowledge and expertise.").

Here, a review of the pleadings very clearly reveals that Daley's claims hinge on issues that must be decided by the Commission in the first instance. For example, in Count 1 for civil conspiracy, Daley asserts that Jones Motor was an employer as defined by the Workers' Compensation Act and required to provide workers' compensation benefits/coverage to its employees (Doc. 1, ¶¶48, 49). Daley further asserts that he and the other drivers were employees of Jones Motor and were entitled to the protections, rights, and benefits afforded by the Workers' Compensation Act (Doc. 1, ¶50). According to Daley, Jones Motor and Zurich conspired with each other to misclassify Daley and the putative class members as "independent contractors" in order to illegally transfer legal liability and financial responsibility for work-related injuries from Jones Motor to its employees for the financial benefit of Jones Motor and Zurich (Doc. 1, ¶¶55–64). Daley further asserts that the actions of Jones Motor and Zurich violated various subsections of section 4 of the Workers' Compensation Act (Doc. 1, ¶¶65, 66).

These allegations and Daley's prayer for relief illustrate that his success on his civil conspiracy claim depends on whether he can prove—as a threshold matter—that he was an employee as defined by the Workers' Compensation Act, that he was entitled to benefits under the Act, and that Jones Motor failed to provide him with such benefits and instead made him pay for the benefits himself (*see* Doc. 1, pp. 19–20). Only the Commission is empowered to make these fact-intensive determinations that are "uniquely suited to the expertise of the Commission." *Keating*, 936 N.E.2d at 1062. *See Gruszeczka*, 992 N.E.2d at 1242; *Hartlein*, 601 N.E.2d at 727. Unless and until the

Commission does so, this Court is incapable of resolving his civil conspiracy claim, and therefore it must be dismissed for failure to state a claim upon which relief can be granted. *See Keating*, 936 N.E.2d at 1062 (Ill. App. Ct. 2010) (affirming that plaintiff could not allege as part of his premises liability claim that the defendants were his employers under the Workers' Compensation Act and were obligated to provide him with workers' compensation insurance unless and until the Commission made those determinations in the first instance); *Scott Wetzel Servs. v. Regard*, 648 N.E.2d 1020, 1023 (Ill. App. Ct. 1995) (affirming dismissal of employer's claim for unjust enrichment because it required employer to prove that employee received benefits to which he was not entitled, "[b]ut only the Commission . . . is empowered to determine a person's entitlement to . . . benefits under the Act.").

Daley's claims in Counts 2, 3, 4, 5, and 6 also must be dismissed for failure to state a claim upon which relief can be granted. In Count 2, Daley alleges that Jones Motor violated the "Illinois Deceptive Business Practices Act" by misrepresenting that Daley and the putative class members were not employees and that it was their obligation and responsibility to purchase insurance policies to cover work-related injuries (Doc. 1, ¶¶73, 74). As a result, Daley and the putative class members "were deceived into paying their own workers' compensation premiums" (Doc. 1, ¶76). In Count 3, Daley alleges that Zurich violated the "Illinois Deceptive Business Practices Act" by misrepresenting that the drivers were not employees but were independent contractors of Jones Motor, which prompted the drivers "into paying to defendant Zurich their own workers' compensation premiums, premiums Jones Motor was required by the Illinois Workers'

Compensation Act to pay" (Doc. 1, ¶¶83–85).

In Count 4, Daley alleges that Jones Motor was unjustly enriched by unlawfully misclassifying its employee drivers as independent contractors and "avoiding its statutory obligation to pay workers' compensation premiums," among other things (Doc. 1, ¶¶95, 99). In Count 5, Daley alleges that Zurich was unjustly enriched by conspiring with Jones Motor to misclassify its drivers as independent contractors and then collecting premiums from the drivers for insurance policies that were "redundant to the employees' statutory workers' compensation rights pursuant to the Illinois Workers' Compensation Act." (Doc. 1, ¶102).

In Count 6, Daley alleges in pertinent part that Jones Motor violated the Illinois Wage Payment and Collection Act, 820 ILL. COMP. STAT. 115/1, by unlawfully deducting "occupational accident policy" premiums that were actually workers' compensation policy premiums from his wages (Doc. 1, ¶¶33–36, 68, 106–109).

As the preceding paragraphs illustrate, Daley cannot succeed on his claims in Counts 2 through 6 without proving as a threshold matter that he was an employee as defined by the Workers' Compensation Act and that Jones Motor failed to provide him with the benefits he was entitled to under the Act and instead unlawfully required him to pay for the benefits himself. Again, only the Commission is empowered to make these determinations. Until the Commission does so, this Court is incapable of resolving Daley's claims, and they must be dismissed for failure to state a claim upon which relief can be granted.

The Court is unpersuaded, as well as confused, by Daley's argument that the

Illinois Workers' Compensation Commission cannot have exclusive jurisdiction over the threshold issues of his employment status and entitlement to benefits because he does not have a pending workers' compensation claim for a workplace injury or death (Doc. 34). As Defendants pointed out, Daley does in fact have a pending workers' compensation claim against Jones Motor (Doc. 35, p. 4). Even if that weren't true, Daley does not show why a pending workers' compensation claim is a prerequisite to reporting a company's workers' compensation fraud. Surely, an individual is not required to injure himself at work and file a workers' compensation claim before he can report that the company was wrongfully making him pay for his own workers' compensation insurance?

The Court is also unconvinced by Daley's argument that Defendants should be judicially estopped from denying the employment status of its drivers in this litigation (Doc. 34, p. 12). According to Daley, the Commission need not revisit the issue of whether he and the putative class members are employees because Defendants submitted to the authority of the Illinois Workers' Compensation Commission in previous workers' compensation settlements (*Id.*). Daley considers Defendants' participation in these settlements to be a concession "that an employer-employee relationship existed" (*Id.*).

"Judicial estoppel is an equitable doctrine to be applied flexibly with an eye toward protecting the integrity of the judicial process." *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004)). The doctrine has a "broad antifraud purpose" and "protects the

courts from being 'manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Jarrard*, 408 F.3d at 915; *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013) (quoting *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 527 (7th Cir. 1999)).

The application of judicial estoppel is "not reducible to any general formulation of principle," though the inquiry is typically informed by several factors. *Grochocinski*, 719 F.3d at 795.

> First, a party's position must be clearly inconsistent with a position earlier taken. Second, the party must have prevailed on the basis of its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Third, we consider whether the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. A fourth factor to consider is whether the operative facts remain the same in both cases.

*Jarrard*, 408 F.3d at 914–15 (citations omitted).

Here, it is not obvious that any of the factors enumerated above have been satisfied. For instance, while Defendants may have entered into one or more settlement agreements, a settlement agreement on its face does not necessarily represent a "position" that is "clearly inconsistent" with their current position. There is no evidence that Defendants conceded employment status within the settlement contracts.[3] Similarly, it is not clear that the "operative facts remain the same" between the actions involving the alleged settlement contracts and the current litigation, mainly because the Court knows almost nothing about the particulars of the individuals involved and their

---

[3] Take, for instance, *Marquez v. Martorina Family, LLC*, 55 N.E.3d 1252, 1254 (Ill. App. Ct. 2016), where a settlement contract approved by the Commission included the caveat "that all elements of the claim are disputed, 'including the employer/employee relationship.'"

jobs with Jones Motor. There is also no clear sign that the Court has been "misled." Jones Motor has not yet taken a definitive position in this litigation (*see* Doc. 24), and the Court has no idea what position, if any, Jones Motor has taken in Daley's workers' compensation proceedings currently pending before the Commission.

Without more, the Court declines to take a determinative issue out of contention by extending judicial estoppel to this matter. *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999) (judicial estoppel "may not be used to hamstring a litigant from advancing a particular position when this position is not clearly inconsistent with a prior position or when the facts of the two cases at issue are not identical.").

## CONCLUSION

For the reasons explained above, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Accordingly, Jones Motor's Motion to Dismiss (Doc. 24) is **GRANTED**, and this action is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

IT IS SO ORDERED.

DATED: March 29, 2018

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**